## YAZOO & M. V. R. CO. *v.* HUFF ET AL.

[71 South. 757.]

1. RAILROADS. *Death of persons on tracks. Actions. Sufficiency of evidence. Negligence. Trespassers. Children. Precautions as to persons seen on tracks. Incredible evidence. Weight.*

Where in an action for the death of a child on a railroad track, the evidence was undisputed that the child was very small, that he was lying between the rails at a point where there was a pronounced curve in the roadbed, that it was impossbile for the engineer to detect or at first discern that the object he saw was a human being; and that when he first discovered that a human being was in danger, he applied the emergency brakes, sanded the rails and did everything in the world that an engineer could do to stop the train and prevent the accident, in such case the railroad company was not negligent nor liable for the death of the child.

2. NEGLIGENCE. *Care as to trespassers. Children.*

A child though of tender years may be a trespasser upon a railroad track.

3. DEATH OF PERSONS ON TRACK. *Care as to trespassers.   Children.*

   Until a child trespassing on a railroad track has been seen and distinguished as a human being, the engineer was under no obligations to the child to check or stop his train.

4. SAME.

   If an engineer in the operation of a fast moving train discerns a helpless infant on the track he, as well as his company, is under the absolute duty of exercising the highest degree of care and doing everything possible to prevent injury to the child. This rule, however, presupposes knowledge, by the engineer of the child's presence and danger.

5. EVIDENCE. *Weight.   Incredible evidence.*

   Where in an action for death of a child on a railroad track, the engineer of a fast train testified that he did not see the child even as an object, until within one hundred and fifty feet, such testimony is not necessarily rendered incredible by measurements after the accident, showing that an engineer could have seen the small child a distance of five hundred feet, since the actions of an engineer of a fast train should not be viewed in the light of a calm and deliberate test, made by witnesses standing on the track, and looking intently at a small child, which they knew was being put on the track for the purpose of making the test.

APPEAL from the circuit court of Tallahatchie county. HON. J. B. ECKLES, Judge.

Suit by Eddie Huff and others against the Yazoo & Mississippi Valley Railroad Company.   From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*James Stone & Son,* for appellant.

*Gary & Rice,* for appellees.

STEVENS, J., delivered the opinion of the court.

Appellees recovered a judgment in the sum of five thousand dollars against appellant for the alleged negligent killing of a little negro boy about four years old, the child of appellees.   It appears that the little boy

went to sleep upon the track of appellant about five miles west of the town of Charleston. At the point where the child was lying there was a considerable curve, and there is testimony showing that the distance the engineer, being on the lookout, might have seen the sleeping child was approximately five hundred feet. The train that caused the injury complained of consisted of five flat cars, heavily loaded with green oak timbers, and was running at the rate of not less than twenty miles an hour. There was a new switch stand in the curve of the track some five hundred and twenty feet or more from the point where the child was lying and near a public road crossing, and, in passing over this road crossing and by this new switch stand before reaching the place of the accident, the testimony shows that the engineer blew his whistle and directed a good deal of his attention to the new switch then being put in there. The evidence discloses that the train was properly equipped with air brakes and otherwise, and that the track was a good one. The engineer says that:

"After I passed this switch, I noticed both my engine and tank were coming all right, and I glanced down the track and saw a small object in the track after I got some distance by this switch stand, and it was several instants before I discovered it was a human. As soon as I discovered it was a human, I put my brakes in emergency, and threw sand upon the rail, and did everything in the world that an engineer could do to avoid the accident."

He also says:

"As soon as I discovered it was an object on the track, I sounded the alarm whistle."

He further says:

"The object did not move; it was lying inside the rails, and its head was towards the middle of the track. It was very hard to see it at all. To show you how small the object was, the pilot of the engine ran over the child, and there was a little bolt in the ash pan, and

that hit him in the back of the head. The pilot to the engine is very low to the ground. It passed over this human and didn't tear it up whatever. . . . It never moved ʾa muscle when I blew the whistle; didn't move a muscle at any time. I walked out where I could see it, wishing that I could save it.''

The engineer further testifies that it was from three hundred and seventy-five to four hundred feet from the time he put on the brakes until the engine stopped, and that ''no human living being could have stopped that train sooner.''

At the close of the testimony the court declined to grant a peremptory instruction requested by appellant, but submitted the cause to the jury. It is contended by counsel for appellees that the evidence shows the child was seen by the engineer as he was passing the switch stand; that this switch stand was five hundred and twenty feet or more from the place where the child was lying, and that therefore the engineer was guilty of negligence in not stopping his train earlier. We have examined this record with much patience and care to determine whether there is sufficient conflict in the ʾtestimony upon which the jury could predicate negligence. In our judgment the proof fails to show any negligence whatever. The evidence is undisputed that the subject of this most unfortunate accident was a very small negro boy;ʾ that he was lying between the rails at a point where there is a pronounced curve in the roadbed; that it was impossible for the engineer to detect or at first discern that the object he saw was a human being; and that when he did first discern that a human life was in ʾdanger, he applied the emergency brakes, sanded the rails, and did everything in the world that an engineer could do to stop the train and prevent the accident. He gave the alarm whistle when the unknown object was first detected. The object did not move at the alarm, and the engineer, of course, could not appreciate

the necessity of stopping his train until he discerned
that the object was at least probably a human being.
Eddie Huff, the father of deceased, admits that it was
one hundred and seventy-two steps from the switch to
where the body was found. To the same effect was the
testimony of Ida Shields, another witness introduced by
plaintiff. It appears that some time after the accident
certain inspection or measurements were had under the
direction of the attorneys for the plaintiff and in taking
these measurements witness John Sevier testified that
he counted the steps from the switch stand to the point
where the child was killed as one hundred and seventy.
This was not a case reflecting an injury done at a public
road crossing, within the confines of a municipality, or
in a congested district. This accident occurred in the
country, and at a point where the employees of the rail-
road had a right to expect a clear track. Without elab-
oration, therefore, we think this case is controlled by
the principles this day announced by us in the case of
*Y. & M. V. R. R. Co.* v. *Tiny Bell Smith et al.,* 71 So. 752.

It is contended by counsel for appellees that the de-
ceased was a child of such tender years that he could
not be guilty of contributory negligence, and could not
be classed as a trespasser. We think in this case it is
immaterial whether the child had or had not reached the
years of discretion. The question is not whether the
deceased was guilty of contributory negligence, but
whether appellant was negligent. We approve the state-
ment of Woods, J., in *Railroad Co.* v. *Williams,* 69 Miss.
631, 12 So. 957, as follows:

"The test of responsibility is, Did the striking of the
child by the train occur after the engineer had seen—
not might or ought to have seen—that is, discerned or
distinguished, the girl. Until the girl had been seen,
discerned to be a human being, the engineer was under
no obligation to the trespasser to check or stop his
train, whatever may have been his obligation to the pas-
sengers who were being hauled by him."

It may be conceded as a true rule, founded upon justice and a proper value of human life, that if an engineer in the operation of a fast-moving train discerns a helpless infant on the track, he, as well as his company, is under the absolute duty of exercising the highest degree of care and doing everything possible to prevent injury to the innocent child. The rule, however, presupposes knowledge by the engineer of the child's presence and danger. In our judgment the engineer in the instant case has met all the requirements of this rule. To hold otherwise would convict him of manslaughter. It is hard to believe that a responsible engineer would gamble with the life of a child of tender years; and that he did not in this case is manifest from the undisputed testimony.

The engineer is most positive in his testimony that he did not see the object at all until within one hundred and fifty feet of it. He then did not at first know what the object was. He did the very natural thing of sounding the alarm, and there is no evidence that he took his eyes off the object, and that he failed to act promptly and effectively in applying the brakes and stopping the train. The whole tragedy was enacted within a few moments of time. That the train was brought to a quick stop is conclusively shown by all the testimony in the case. The plaintiff, by taking certain measurements after the accident, attempted to show that an engineer could have seen the small child a distance of at least five hundred feet. We do not think, however, the actions of the engineer should be viewed in the light of a calm and deliberate test, made by witnesses standing on the track and looking intently at a small child, which they knew was being put upon the track for the very purpose of making the test. The engineer of a fast-moving train has many duties to perform, and it is not unreasonable that he, as he says, did not, in fact, see the object at all until within one hundred and fifty feet of

the child, and when it was absolutely too late to prevent the injury.

The peremptory instruction requested by appellant should, in our judgment, have been granted; and therefore, without reference to any other assignments of error relied upon, we think the judgment of the lower court should be set aside, and that judgment should be entered here for appellant.

*Reversed.*